# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 12-00456-JW |
| | Chapter 11 |
| Congaree Triton Acquisitions, LLC, | |
| Debtor. | **ORDER** |

This matter comes before the Court upon the motion of Triton Stone Group LLC ("Triton"), Dakota Plumbing Products, LLC ("Dakota") and Nikon (collectively, the "Movants") seeking an order (i) dismissing the above-captioned case pursuant to 11 U.S.C. § 1112,[1] (ii) converting the case to a case under Chapter 7 of the Bankruptcy Code pursuant to § 1112, or (iii) appointing a Chapter 11 trustee (collectively, the "Motion"). Congaree Triton Acquisitions, LLC (the "Debtor") filed an objection to the Motion on June 18, 2012. In addition, Transportation Consultants, Inc. and Triton Stone New Orleans, LLC filed a response to the Motion on June 13, 2012, which expressed their support for the Movants' request to convert the case to a case under Chapter 7. Greenfield Commercial Credit LLC ("Greenfield") filed a limited objection to the Motion on the same date. On June 21, 2012, the Court held a hearing on the Motion (the "Hearing").

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter by Fed. R. Bankr. P. 7052 and 9014(c), and based upon the filings of the parties in this matter, applicable statutory and case law, the testimony of the witnesses, the arguments and statements of counsel

---

[1] Further references to title 11 of the United States Code (the "Bankruptcy Code") shall be by section number only.

at the hearing, and the Examiner's Report (as defined below), the Court makes the following findings of fact and conclusions of law:[2]

## FINDINGS OF FACT

1.      The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 26, 2012 (the "Petition Date").

2.      Triton is a group of wholesale distributors of granite, other natural stone products, and tiles.  See Examiner's Report at p. 11.  Triton is comprised of 17 distributorship locations throughout the United States.  Id.  On March 11, 2011 (the "Acquisition Date"), the Debtor acquired substantially all of the assets of two Triton distributorships, one located in Myrtle Beach and another located in Charlotte, North Carolina (collectively, the "Acquired Distributorships"), for the purchase price of approximately $3 million in cash and promissory notes given to the shareholders of the Acquired Distributorships and other related parties.  Id.  at 10.  Prior to the Acquisition Date, Triton Stone Management, LLC, whose members included other Triton distributorships such as Triton Stone Southaven, Triton Stone New Orleans, and Triton Stone of Knoxville, served as the manager of the Acquired Distributorships.  Id.  at 11.

3.      Upon the Debtor's acquisition of the Acquired Distributorships, the Debtor also entered into a distributorship agreement with Triton.  Since the Acquisition Date, the Debtor and Triton have been involved in a dispute regarding whether the Debtor assumed liability for approximately $4.4 million in trade payables when it purchased the operating assets of the Acquired Distributorships.  Id.  at 34.  To date, the Debtor's claims register reflects claims filed by the Movants, Transportation Consultants, Inc., and Triton Stone New Orleans, LLC in the total amount of approximately $2.2 million.

---

[2]        To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

4.      Greenfield is the holder of a claim against the Debtor secured by a lien on all of the Debtor's accounts, goods, inventory, merchandise, personal property, machinery, equipment, general intangibles, and proceeds from the foregoing (collectively, the "Collateral").   Prior to the Petition Date, Greenfield commenced a claim and delivery action against the Debtor, and, pursuant to a consent order, the state court appointed a receiver to liquidate the Collateral.  Upon the commencement of the Debtor's Chapter 11 case, the court-appointed receiver ceased his liquidation efforts.

5.      On February 17, 2012, Triton filed its original motion to appoint a Chapter 11 trustee or, in the alternative, convert or dismiss this case (the "Original Motion").  Dakota and Nikon subsequently filed a joinder in the Original Motion (the "Joinder") and requested the same relief as Triton but also requested as an alternative the appointment of an Examiner pursuant to § 1104.  The Debtor objected to both the Original Motion and the Joinder.  Prior to the hearing, the Debtor and Greenfield reached a settlement regarding the Debtor's use of cash collateral, which resolved the issue of whether the Debtor improperly used cash collateral to the substantial harm of one or more creditors.  At the hearing on the Original Motion on March 15, 2012, Triton presented argument and some evidence of, among other things, improper payments made by the Debtor prepetition and raised issues regarding the Debtor's accounting, including insufficient books and records.  At the same hearing, the Debtor refuted the allegations by Triton, Dakota, and Nikon; attributed some problems to working in a receivership; and indicated that it was on the verge of acquiring a new lending source critical to a successful organization.

6.      On March 23, 2012, the Court entered an order appointing an examiner, and, on March 30, 2012, George W. Durant was appointed as the independent examiner in this case (the

"Examiner").[3]  The Examiner is a certified public accountant with over 35 years of accounting experience that is also certified in financial forensics and accredited in business valuation.  In addition, the Examiner is an experienced bankruptcy professional that has previously served as both an examiner and an expert witness before this Court.  Between April 1, 2012 and May 23, 2012, the Examiner put forth a substantial effort in performing his duties and expended almost 250 hours in his examination of the Debtor and its financial affairs.[4]  On May 24, 2012, the Examiner filed his first report (the "First Report").

7.      In support of the Motion, the Examiner testified at the Hearing that the Debtor and its representatives failed to cooperate with several of his requests for information.  The Examiner also testified that (i) the Debtor's books and records were inadequate; (ii) the Debtor's filed monthly operating reports were misleading; (iii) the Debtor incurred a significant loss of inventory due to theft in the amount of approximately $172,000 (the "Inventory Loss"); (iv) the Debtor has incurred significant ongoing losses since the commencement of its Chapter 11 case; (v) the Debtor has failed to comply with the guidelines set forth by the United States Trustee; and (vi) the Debtor made several distributions to insiders prior to the commencement of its Chapter 11 case.

8.      With respect to the details of the Inventory Loss, based on the Debtor's amended monthly operating report for April 2012 and the testimony of Ray Shealy, the general manager of Triton Stone of the Carolinas, the Debtor could not account for approximately 309 slabs of stone that went missing from the Debtor's Charlotte warehouse between January 27, 2012 and February 15, 2012.    According to Mr. Shealy, each marble or granite slab weighed

---

[3]      At the hearing on the Original Motion, the Debtor consented to the appointment of an examiner.
[4]      See First Application for Examiner Compensation (Doc. No. 146) (the "Application").  In addition to the time included in the Examiner's Application, the Examiner also expended 19.45 hours prior to his appointment, but that time was not included in the Application.  Application at p.2.

approximately 1,000 pounds.   The Debtor did not demonstrate that it had adequate loss

prevention safeguards in place prior to the Inventory Loss.  In addition, Carroll A. Campbell III

("C. Campbell"), the Debtor's CEO, testified at the Hearing that the Debtor's previous location

was "not conducive to controlling the inventory slipping out the back door," and, therefore, the

Debtor relocated its Charlotte facility following the Inventory Loss.

9.      The Movants also established through the testimony of John D. Cattano, the

Debtor's CFO, that certain taxes, including sales taxes, were not paid in a timely fashion

following the commencement of the Chapter 11 case.  Furthermore, the Movants raised serious

concerns about whether the Debtor has filed certain tax returns related to sales taxes, FICA, and

federal unemployment taxes.  Based on his testimony at the Hearing, Mr. Cattano was uncertain

whether the tax returns were filed by the Debtor's payroll company, but presumed they were.

The Debtor did not provide any evidence establishing that such tax returns were actually filed.

10.     In response to the Movants' arguments, counsel for the Debtor argued that a

reasonable justification exists to excuse the acts or omissions that establish cause under

§ 1112(b)(4).  In addition, the Debtor argued that conversion, dismissal, or the appointment of a

Chapter 11 trustee was not in the best interests of the creditors of the estate because the

liquidation value of the Debtor's inventory would result in a distribution to creditors far less than

what creditors would receive in a successful reorganization.  In addition, Debtor's counsel noted

that the combination of the current administrative costs of the case, including attorneys' fees and

the Examiner's fees, and the administrative costs of a trustee, either under Chapter 7 or Chapter

11, would further reduce any potential distribution to the Debtor's creditors.

11.     At the Hearing, counsel for the Debtor also addressed the status of the Debtor's

financing prospects.  Richard Michael Campbell II ("R. Campbell"), Chief Development Officer

of the Debtor, testified that the Debtor was in discussions with two prospective lenders, but had not yet finalized a lending commitment and failed to provide any evidence, such as a commitment letter, a term sheet, or a representative from either of the prospective lenders, that such financing was imminent. Both Debtor's counsel and R. Campbell stated that the Debtor's ability to finalize financing was delayed by the pendency of the Motion because prospective lenders would be unwilling to lend to the Debtor if a Chapter 11 trustee was appointed or the Chapter 11 case was dismissed or converted.

12.     Finally, at the Hearing, the Court elicited responses from the Debtor, its creditors and the United States Trustee regarding whether conversion, dismissal, or the appointment of a Chapter 11 trustee was in the best interests of the creditors in this case if cause was established. The Movants along with Transportation Consultants, Inc. and Triton Stone New Orleans, LLC argued that the conversion of this case to one under Chapter 7, the appointment of a Chapter 7 Trustee, and the orderly liquidation of the Debtor would be in the best interests of creditors of the Debtor. The Debtor along with counsel for Greenfield Commercial Credit LLC and the Thor Entities,[5] a supplier under the Debtor's consignment agreement that was previously authorized by the Court on May 8, 2012, argued that it was in the best interests of the creditors for the Debtor to remain in possession and for the case to continue under Chapter 11.

13.     The United States Trustee did not file a responsive pleading to the Motion indicating whether conversion, dismissal, or appointment of a Chapter 11 trustee was warranted in this case. However, at the Hearing, the United States Trustee recommended that the Court rely on the findings set forth in the Examiner's report and the Examiner's testimony at the Hearing. In addition, the United States Trustee recommended that, if the Court were to find that

---

[5]     The Thor Entities include Thor Granitos, Ltda., Thor Granitos e Marmores, Ltda., Thor Nordeste Granitos, Ltdd., Thor Tiles Granitos, Ltds., Thor Norte and Granitos, Ltda.

cause exists under § 1112(b), conversion of the case to a case under Chapter 7 was in the best

interests of the creditors.

## CONCLUSIONS OF LAW

### 1.   Cause for Conversion or Dismissal under § 1112(b)(1)

Movants seek the conversion or dismissal of this case pursuant to §1112(b)(1).[6]  Section

1112(b)(1) provides that:

> Except as provided in paragraph (2) and subsection (c), on request of a
> party in interest, and after notice and a hearing, the court shall convert a
> case under this chapter to a case under chapter 7 or dismiss a case
> under this chapter, whichever is in the best interests of creditors and the
> estate, for cause unless the court determines that the appointment under
> section 1104(a) of a trustee or an examiner is in the best interests of
> creditors and the estate.

11 U.S.C. § 1112(b)(1).

As a party seeking an order of conversion or dismissal of a case under Chapter 11

pursuant to § 1112(b)(1), the Movants bear the burden of establishing cause.  See In re Ashley

Oaks Development Corp., 458 B.R. 280, 283 (Bankr. D.S.C. 2011) (citing In re Landmark

Atlantic Hess Farm, LLC, No. 10-24656-DK, 2011 WL 831724 (Bankr. D. Md. Mar. 3, 2011)).

Section 1112(b)(4) sets forth a non-exhaustive list of sixteen examples of cause sufficient to

warrant conversion or dismissal.  See In re Draiman, 450 B.R. 777, 826. (Bankr. N.D. lll. 2011)

("'Cause' is defined in § 1112(b)(4) with a list of examples, but that list is viewed as

illustrative.")

Upon the establishment of cause by a party in interest, the dismissal or conversion of a

case is mandatory, unless the debtor can establish evidence that satisfies the specific

---

[6]      In light of the statements made by counsel for the Movants, the Debtor, Greenfield, the Thor Entities, and
the United States Trustee, the Court need not address at this time whether the appointment of a Chapter 11 trustee is
appropriate in this case.

requirements set forth in § 1112(b)(2).[7]  See Ashley Oaks Development Corp., 458 B.R. at 284.

See also In re Keeley and Grabanski Land Partnership, 460 B.R. 520, 536 (Bankr. D.N.D. 2011)

("If cause has been established, the burden shifts to [d]ebtor to prove the case falls within the

'unusual circumstances' exception to § 1112(b)(1)'s mandatory dismissal").  In this case, the

Debtor has the burden of establishing the requirements set forth in § 1112(b)(2).  See 11 U.S.C.

§ 1112(b)(2); DCNC North Carolina I, LLC v. Wachovia Bank, N.A., Nos. 09-3775, 09-3776,

2009 WL 3209728 (Bankr. E.D. Pa. 2009).

In the instant matter, the Movants argued that the Debtor's case should be dismissed

pursuant to § 1112(b)(4) because cause exists on the following grounds:

(A)     substantial or continuing loss to or diminution of the estate and the
        absence of a reasonable likelihood of rehabilitation;[8]
(B)     gross mismanagement of the estate;[9]
(C)     failure timely to pay taxes owed after the date of the order for relief or to
        file tax returns due after the date of the order for relief.[10]

In addition to the grounds expressly enumerated in § 1112(b)(4), the Movants argued that cause

exists on the following additional bases: (i) the Debtor failed to cooperate with the Examiner

appointed in this case, (ii) the Debtor has failed to file accurate monthly operating reports thus

far, and (iii) the Debtor engaged in several questionable transactions with insiders prior to the

commencement of the Chapter 11 case.  "The presence of any one of these statutory factors, or

other factors deemed important by the bankruptcy court, is sufficient to warrant dismissal or

conversion."  Jackson v. U.S. (In re Jackson), No. 96-1357, 1997 WL 467534 at *3 (4th Cir.

1997, August 15, 1997).  Based on the evidence presented by the Movants, including the

testimony of the Examiner, the Examiner's Report, and the testimony of the Debtor's officers

---

[7]      § 1112(c) is not applicable.
[8]      § 1112(b)(4)(A).
[9]      § 1112(b)(4)(B).
[10]     § 1112(b)(4)(H).

and principals, the Movants have met their burden in establishing cause for conversion or dismissal under § 1112(b)(1).

      a.  <u>Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation</u>

The Court finds that cause exists under § 1112(b)(4)(A).  It appears that the Debtor has incurred substantial losses, including an operating loss of $561,972 from the commencement of the Chapter 11 case through April 2012.  In addition, based on the Examiner's review of the monthly operating report for May 2012, the Debtor incurred an additional operating loss for May 2012 in the amount of $71,575.

However, "[i]t is not enough just to show continuing loss to the estate; the moving party must also show the absence of a reasonable likelihood of rehabilitation." <u>In re BH S & B Holdings, LLC</u>, 439 B.R. 342, 347 (Bankr S.D.N.Y. 2010) (citing <u>In re 1031 Tax Grp., LLC</u>, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)).  <u>See</u> <u>In re Whitney Lake, LLC</u>, No. 08-057299-JW, slip op. at 4 (Bankr. D.S.C. May 5, 2009).  As the Court noted in <u>Ashley Oaks Development Corp.</u>, "'Rehabilitation is not synonymous with reorganization and the determination is not whether a debtor can confirm a plan, but whether the debtor has sufficient business prospects' for the benefit of creditors and the estate."  458 B.R. at 284 (quoting <u>Landmark Atlantic</u>, at *5).

The Examiner, through both his testimony at the Hearing and the Examiner's Report, noted the Debtor's history of losses prior to the commencement of this case and the significant operating losses incurred by the Debtor postpetition.  In addition, the Examiner expressed serious doubt regarding the Debtor's future projections.  Thus, based on the Debtor's history and prospects, the Examiner concluded that "the next four months will be costly and more likely than not will end in liquidation of the Debtor."  Examiner's Report at p. 7.

Although the United States Trustee did not file a responsive pleading to the Motion, his recommendation that the Court rely on the testimony of the Examiner and the findings set forth in the Examiner's Report demonstrates that the United States Trustee does not believe that there is a reasonable likelihood of rehabilitation for the Debtor.

The Debtor's current financing situation is also relevant to the Court's determination of whether there is a reasonable likelihood of rehabilitation.  At the earlier hearing on the Original Motion, representatives of the Debtor indicated that financing from an outside source was both critical and imminent.  The purpose of the financing was to allow the Debtor to purchase new inventory, which it had not done since October 2011, and continue its operations.  See Examiner's Report at p. 61.  Nevertheless, the Debtor failed to provide the Court with any credible evidence, such as a commitment letter, a term sheet, or the testimony of a prospective lender, indicating that it was on the verge of securing such financing or demonstrating that the prospective financing was any more imminent than it was at the hearing on the Original Motion almost 100 days ago.

Therefore, based on the Examiner's Report, the recommendation of the United States Trustee, and the Debtor's inability to secure financing prior to the Hearing, the Court finds that there is not a reasonable likelihood of rehabilitation.

b.  Gross Mismanagement of the Estate

The Court also finds that the Movants established the existence of cause under § 1112(b)(4)(B).  Based on the testimony of the Debtor's representatives and the Examiner, the Debtor incurred the Inventory Loss sometime between January 27, 2012 and February 15, 2012.  In addition to the significant value of the Inventory Loss, the Court cannot ignore the sheer quantity of the inventory that is missing.  Although the Debtor's witness, Mr. Shealy, stated that

there was equipment on site that could easily move large quantities of inventory, the fact is that under the Debtor's watch, a significant amount of inventory weighing more than 300,000 pounds disappeared.  In addition, based on the testimony of C. Campbell, the Debtor did not demonstrate that adequate loss prevention safeguards were in place at the time of the Inventory Loss. Although the representatives of the Debtor attributed the Inventory Loss to theft, the fact remains that the Debtor, as debtor in possession, has a fiduciary duty to its creditors to protect the assets of the estate, which includes ensuring that the appropriate safeguards are in place to protect against occurrences such as the Inventory Loss.  See Ford Motor Credit Co. v. Weaver, 680 F.2d 451 (6th Cir. 1982) ("[A] debtor in possession has the duty to protect and conserve the property in his possession for the benefit of creditors.")  The Court also notes that the Debtor failed to disclose the Inventory Loss in its monthly operating reports in a timely fashion, waiting until its amended monthly operating report for April 2012 to disclose the loss.  The amended monthly operating report was filed on June 8, 2012, 114 days from February 15, 2012.

The Debtor's failure to file accurate monthly operating reports is another example of the Debtor's gross management of the estate.  "Monthly reports and the financial disclosures contained within them 'are the life-blood of the Chapter 11 process' and are more than 'mere busy work.'"  In re Whetten, Nos. 11-14571, 11-14572, 2012 WL 2018259, *3 (Bankr. D.Colo. June 5, 2012) (quoting Matter of Berryhill, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)).  Based on the testimony of the Examiner, the information contained in the Debtor's monthly operating reports was both inaccurate and misleading, making it nearly impossible for the Examiner, the United States Trustee, or any other party in interest to rely on the financial picture being painted by the Debtor through such reports, particularly in light of the significant operating losses

incurred by the Debtor during the pendency of this Chapter 11 case.[11]

      As an ancillary issue to the Debtor's inability to prepare and file accurate monthly operating reports, the Debtor's failure to timely comply with the requests of the Examiner to report on an accrual basis also demonstrates mismanagement of the Debtor's estate.   The Examiner's request for reporting on an accrual basis appears to have been reasonable, particularly under the Examiner's mandate and the circumstances of this case.   Although the representatives of the Debtor, particularly Mr. Cattano, indicated that the United States Trustee required that the Debtor report on a cash basis, the Debtor failed to provide any evidence of such request, including testimony or correspondence from the United States Trustee in support of its position.

      According to the Operating Guidelines and Reporting Requirements of the United States Trustee for the District of South Carolina, "[u]pon the filing of the case, the debtor **must** immediately close pre-petition bank accounts and open new 'Debtor-in-Possession' bank accounts." (emphasis added).   However, after the Petition Date, the Debtor did not timely close its prepetition accounts and amounts were drafted from one of the Debtor's prepetition accounts for payments on behalf of insiders of the Debtor, including several car payments for a leased BMW used by Fritz Gildemeister and guaranteed by John Cattano.   Such payments appear to be unfair to the Debtor's other creditors and are an indication of improper management of the Debtor's estate.   Therefore, the Court finds that there is sufficient evidence of gross mismanagement of the Debtor's estate.

---

[11]    At the Hearing, C. Campbell expressed his disapproval of the amount of fees and expenses being sought by the Examiner in the Application.   However, as the Examiner noted at the Hearing, a significant portion of the Examiner's efforts and the costs associated therewith appear to be a direct result of the Debtor's failure to file accurate monthly operating reports when they are first due and the Debtor's failure to fully comply with the Examiner's requests for information.

c.  <u>Failure Timely to Pay Taxes Owed after the Date of the Order for Relief or to File
Tax Returns Due after the Date of the Order for Relief</u>

The Debtor also acknowledged that it failed to pay certain postpetition sales taxes on a timely basis, which constitutes cause for dismissal or conversion under § 1112(b)(4)(I).  The Movant also raised concerns regarding whether the Debtor has failed to timely file tax returns due after the Petition Date.  Although the Debtor presumed that the appropriate returns were filed and, if such returns were not timely filed, such failure was a result of a disconnect between the Debtor's payroll provider and the Internal Revenue Service, the Debtor provided no evidence in support such statements.

d.  <u>Nonenumerated Grounds</u>

The Court finds that cause also exists based on the nonenumerated grounds argued by the Movants at the Hearing.

First, the Debtor is required to cooperate with the information requests sent by the Examiner.  The Examiner is "a court fiduciary."  <u>Matter of Hamiel & Sons, Inc.</u>, 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982).  "An Examiner's legal status is unlike that of any other court-appointed officer which comes to mind. He is first and foremost disinterested and nonadversarial. The benefits of his investigative efforts flow solely to the debtor and to its creditors and shareholders, but he answers solely to the Court."  <u>In re Baldwin United Corp.</u>, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985).  At the Hearing, the Examiner was firm in his testimony that the Debtor failed to cooperate with his information requests, despite providing the Debtor and its representatives with several opportunities to provide the requested information. Therefore, based on the Examiner's testimony regarding the Debtor's failure to comply with his information requests, which the Court finds to be convincing, the Court concludes that such failure to respond constitutes cause for conversion or dismissal under § 1112(b)(1).

The Court further finds that the Debtor's failure to file accurate monthly operating reports is also grounds to warrant conversion or dismissal.  As previously noted above, although the Debtor timely filed its monthly operating reports, the Examiner raised serious concerns about the accuracy of the information contained in the monthly reports, even after the Debtor filed amended monthly operating reports.  The Examiner also raised concerns regarding the appropriate accounting methods used in such reports.  Absent sufficient evidence to the contrary regarding the accuracy of the monthly operating reports or the Debtor's selected accounting method, which the Debtor failed to provide, the Debtor's failure to file accurate monthly operating reports is also grounds to warrant conversion or dismissal.

Finally, according to the Examiner's Report, the Debtor made a number of prepetition distributions to insiders "totaling a net $186,178.76 through December 11, 2011" while the Debtor itself was insolvent and during the period of time within which the Debtor was subject to a state court receivership.  Examiner's Report at p. 45.  Although these distributions occurred prepetition, the Court finds that the nature of these transactions demonstrates a disregard for the Debtor's creditors, and, thus, combined with the other nonenumerated factors set forth by the Movants, constitutes sufficient cause to warrant conversion or dismissal of this case.

**2.      Exceptions to Conversion or Dismissal under § 1112(b)(2)**

Section 1112(b)(2) provides as follows:

> The Court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing is not in the best interests of the creditors and the estate, and the debtor or any other party interest establishes that -
>
> > (A) there is reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

> (B) the grounds for granting such relief include an act or omission
> of the debtor other than paragraph (4)(A) –
>
>> (I) for which there exists a reasonable justification for the
>> act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time
>> fixed by the court.

11 U.S.C. § 1112(b)(2).[12]

As an initial matter, in order for a debtor or other party in interest to successfully defeat a request under § 1112(b)(2) for conversion or dismissal based on cause, the court must find and specifically identify "unusual circumstances establishing that converting or dismissing is not in the best interests of the creditors and the estate." §1112(b)(2). Although "unusual circumstances" is not defined by the Bankruptcy Code, "courts have determined that it contemplates conditions that are not common in most chapter 11 cases. Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest[s] of creditors and the estate." In re Van Eck, 425 B.R. 54, 63 (Bankr. D. Conn. 2010) (quoting In re Wallace, No. 09–20496, 2010 WL 378351, at *7 (Bankr. D. Id. January 26, 2010) (citation and internal quotation marks omitted)). In addition, courts have a significant amount of discretion when determining whether "unusual circumstances" exist. See In re Miell, 419 B.R. 357, 367 (Bankr. N.D. Iowa 2009) (citations omitted) ("Courts have significant discretion in determining whether unusual circumstances exist which weigh against conversion or dismissal.")

Even if a court specifically identifies the presence of unusual circumstances, § 1112(b)(2) is written in the conjunctive, and, thus, the Debtor must also establish the following to succeed in its challenge to the Motion: (1) there is a reasonable likelihood that a plan will be confirmed

---

[12]    As this Court previously noted in Ashley Oaks Development Corp., § 1112(b) was amended pursuant to the Bankruptcy Technical Corrections Act of 2010, Pub. L. 111–327Stat. 3557 (Dec. 22, 2010). 458 B.R. at 283.

within reasonable period of time, (2) the grounds for conversion or dismissal include an act or omission other than the cause set forth in § 1112(b)(4)(A) for which there is a reasonable justification for the act or omission, and (3) such act or omission will be cured within a reasonable period of time fixed by the court.  11 U.S.C. § 1112(b)(2)(A) and (B).  <u>See</u> <u>Ashley Oaks Development Corp.</u>, 458 B.R. at 284-85 (Section 1112(b)(2) is written in the conjunctive and requires a debtor to establish unusual circumstances and satisfy the elements of § 1112(b)(2)(A) and (B)).  <u>See also</u> <u>In re Julian,</u> No. 11-30151, 2012 WL 506573 at * 1 (Bankr. D.Conn. Feb. 15, 2012) (citing <u>Ashley Oaks</u>); <u>In re Sparkle Stor-All Eaton Twp., LLC</u>, No. 11-30382, 2011 WL 4542709 at *2 (Bankr. N.D. Ohio Sept. 28, 2011).

    a.  <u>Unusual Circumstances</u>

After considering the evidence presented and the record of this case, the Court finds that the Debtor has failed to demonstrate the existence of "unusual circumstances" to establish that conversion or dismissal is not in the best interests of the creditors and the estate.  At the Hearing, the Debtor implied that unusual circumstances exist because two of the parties supporting the relief requested in the Motion, Triton and Triton Stone New Orleans, LLC, are parties to litigation related to the Debtor's purchase of the Acquired Distributorships.  However, contract disputes and even hard feelings between a debtor and a prepetition creditor are not unusual.  The Court also notes that the Debtor's officers and principals are sophisticated business people with substantial business experience, advanced business education, and prior success in other business ventures that were unlikely to be easily taken advantage of in a business transaction of this nature.  Therefore, the Court finds that the Debtor has failed to demonstrate conditions that are not common in most chapter 11 cases that would constitute unusual circumstances necessary for avoiding dismissal or conversion under § 1112(b)(2).

b.    Other Requirements of § 1112(b)(2)(A) and (B)

The Debtor has also failed to satisfy the additional requirements set forth by §1112(b)(2)(A) and (B).

First, the Debtor failed to provide any credible evidence of a reasonable likelihood that a plan will be confirmed within reasonable period of time.  At the time of the Hearing, no plan or disclosure statement was filed with the Court.  Although the Debtor is not required to file a plan and disclosure statement until July 24, 2012, the Debtor failed to provide any credible evidence of sufficient business volume to prevent additional significant operating losses in the future, a normalized inventory source, or a financing commitment, which the Debtor indicated was essential to its ability to reorganize.  In addition, based on the testimony of the Examiner, the Court finds that there are significant questions regarding whether the Debtor's operations are stable and whether the Debtor can sustain its future projections (which the Examiner found to be unrealistic).

Next, the Court finds that the Debtor failed to demonstrate a reasonable justification for the acts or omissions that the Movant alleges constitute cause to dismiss or convert this case under § 1112(b)(4).[13]  There is no reasonable justification for the Debtor's failure to cooperate with the requests of the Examiner.  Although the Debtor argued that either it complied with the Examiner's requests or such requests were too demanding, it is not up to the Debtor to make such a determination.  If the Debtor took issue with the requests, the Debtor should have brought those issues to the Court for determination.  Further, the Inventory Loss represents a significant asset of the Debtor's estate and, as a debtor in possession, the Debtor has a fiduciary duty to

---

[13]    As the Court noted in Ashley Oaks Development Corp., "[s]ome courts have also held that if cause is established under § 1112(b)(4)(A), then the provisions of § 1112(b)(2) do not apply, generally finding that an absence of a reasonable likelihood of rehabilitation necessarily precludes a reasonable likelihood of confirmation." 458 B.R. at 457 (citations omitted).  However, as this Court previously held in Ashley Oaks Development Corp., a finding of cause under § 1112(b)(4)(A) does not prohibit the application of § 1112(b)(2)(A).

creditors to protect the property of the estate and an obligation to report any such loss immediately, both to the appropriate authorities and to the Debtor's creditors. The Debtor has also failed to provide any reasonable justification for the substantial operating losses it has incurred since the Petition Date. Based on the evidence presented at the Hearing, the Debtor failed to convince the Court that its continued operations will not result in greater operating losses to the detriment of its creditors. The Court finds that no argument set forth by the Debtor was sufficient to overcome the findings in the Examiner's Report or the recommendation of the United States Trustee that the Court rely on the findings set forth therein.

Finally, based on the Court's finding of an absence of a reasonable justification for the Debtor's acts or omissions, the Court need not address whether such acts or omissions could be cured within a reasonable period of time fixed by the Court.

## <u>CONCLUSION</u>

Based on the foregoing, the Court concludes that sufficient cause exists under § 1112(b)(4)(A), (B), and (H) to warrant conversion or dismissal of this case. The Movants have also demonstrated that cause sufficient to support a ruling in favor of conversion or dismissal of this case exists based on the nonenumerated grounds set forth by the Movants at the Hearing. The Court finds that no unusual circumstances exist establishing that conversion or dismissal of the case is not in the best interests of creditors or the estate. Furthermore, the Court agrees with the Movants that the Debtor failed to offer credible proof to satisfy the burden necessary to establish a reasonable justification that would excuse the acts or omissions that establish cause under § 1112(b), regardless of whether such acts or omissions could be cured. Finally, the Court finds that conversion of this case to a case under Chapter 7 is in the best interests of the creditors. Therefore, it is hereby

**ORDERED** that this case be, and the same hereby is, converted to Chapter 7 of the Bankruptcy Code; and it is further

**ORDERED** that John D. Cattano, CFO of the Debtor, is hereby designated as the representative of the Debtor pursuant to Fed. R. Bankr. P. 9001(5)(A); and it is further

**ORDERED** that, as the representative of the Debtor, John D. Cattano is hereby required to, among other things, perform any duty or act that is required to be performed by the Debtor pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or order of this Court and attend any examination in which the Debtor's attendance is compelled; and it is further

**ORDERED** that the case as converted to Chapter 7 shall remain assigned to the undersigned Judge; and it is further

ORDERED that the Debtor file in the office of the Clerk of this Court, within fourteen (14) days of the entry of the order:

(1) A schedule of all unpaid debts incurred after the commencement of the Chapter 11 case (including the names and addresses of all creditors) as required by Fed. R. Bankr. P. 1019(5).

(2) Final statements of profit and loss and cash position through the date of conversion,

(3) Description of any postpetition transactions that should be reflected in a Statement of Affairs filed as of the date of conversion; and it is further

ORDERED that the Debtor shall, not later than 14 days after the entry of this order, file the lists, inventories, schedules, and statements of financial affairs required by Fed. R. Bankr. P. 1019(1) and 1007(b), if such documents have not already been filed; and it is further

ORDERED that the Debtor shall, not later than 30 days after the entry of this Order, file and transmit to the United States Trustee a final report and account as required by Fed. R. Bankr. P. 1019(5); and it is further

ORDERED that the Debtor shall immediately turn over to the Chapter 7 trustee all records and property of the estate under their custody and control as required by Fed. R. Bankr. P. 1019(4); and it is further

ORDERED that the Debtor shall immediately cease all business operations and take all necessary and appropriate action to insure that estate assets are properly preserved for the Chapter 7 trustee; and it is further

ORDERED that the Debtor shall immediately relinquish control of its operations and estate property to the Chapter 7 trustee and permit the trustee and his agents unlimited reasonable access to estate property; and it is further

ORDERED that counsel for the Debtor is expected to cooperate fully with the Chapter 7 trustee, upon the appointment by the United States trustee of such Chapter 7 trustee, and take all reasonable action to insure that the Debtor compiles with this Order; and it is further

ORDERED that, upon conversion of this case, the Chapter 7 trustee may request authority to operate the Debtor's business under § 721; and it is further

ORDERED that the Examiner appointed in the Chapter 11 case shall be relieved of all duties and responsibilities regarding this estate upon the appointment by the United States Trustee of the Chapter 7 trustee; and it is further

ORDERED that the clerk shall forward a copy of this order to the Debtor, the attorney for the Debtor, the United States Trustee, and all parties in interest in this case; and it is further

**ORDERED** that a status hearing be scheduled in this matter for July 16, 2012 at 10:30 a.m. at the United States Bankruptcy Court, J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, South Carolina 29201-2423; and it is further

ORDERED that the any failure by the Debtor or Mr. Cattano, as representative of the Debtor, to comply with this Order may result in, among other things, the dismissal of this case or a finding by the Court that they should be held in contempt or have sanctions imposed against them pursuant to § 105, as well as this Court's inherent authority to regulate litigants before it and to address improper conduct as recognized by the Fourth Circuit Court of Appeals in In re Weiss, 111 F.3d 1159 (4th Cir. 1997), and this Court in In re Grimsley, C/A No. 04-02072-W, slip op. (Bankr. D.S.C. May 26, 2006), and In re Henderson, C/A No. 05-14925-W, slip op. (Bankr. D.S.C. Oct. 4, 2006).[14]

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/29/2012**



Entered: 06/29/2012

Chief US Bankruptcy Judge
District of South Carolina

---

[14]    Should this case be dismissed for any reason, any fees due to the clerk of court pursuant to 28 U.S.C. § 1930 and the appendix thereto, or any fees due to the United Sates Trustee pursuant to 28 U.S.C. § 1930(a)(6), shall be paid within ten (10) days of the entry of the order of dismissal.